**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| DENNIS PALKON, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 8:17-cv-2271-T-23TGW |
| ) | JURY TRIAL DEMANDED |
| HSN, INC. ARTHUR C. MARTINEZ, COURTNEE ALICE CHUN, WILLIAM COSTELLO, FIONA DIAS, JAMES M. FOLLO, STEPHANIE KUGELMAN, THOMAS J. MCINERNEY, MATTHEW E. RUBEL, ANN SARNOFF, LIBERTY INTERACTIVE CORPORATION, and LIBERTY HORIZON, INC., ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on July 6, 2017 (the "Proposed Transaction"), pursuant to which HSN, Inc. ("HSN" or the "Company") will be acquired by Liberty Interactive Corporation ("Parent") and Liberty Horizon, Inc. ("Merger Sub," and together with Parent, "Liberty"). Liberty already owns approximately 38.2% of HSN's common stock.

2.      On July 5, 2017, HSN's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Liberty. Pursuant to the terms of the Merger Agreement, shareholders of HSN


TPA046127

will receive 1.65 shares of Series A QVC Group ("QVC") common stock for each share of HSN common stock.

3.     Defendants filed an S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of HSN common stock.

9.     Defendant HSN is a Delaware corporation and maintains its principal executive

2

offices at 1 HSN Drive, St. Petersburg, Florida 33729.  HSN's common stock is traded on the NasdaqGS under the ticker symbol "HSNI."

10.     Defendant Arthur C. Martinez ("Martinez") has served as a director and Chairman of the Board of HSN since August 2008.

11.     Defendant Courtnee Alice Chun ("Chun") has served as a director of HSN since August 2013. Chun was nominated to the Board by Liberty.  Chun serves as Senior Vice President of Investor Relations for Liberty and Liberty Media Corporation.

12.     Defendant William Costello ("Costello") has served as a director of HSN since August 2008. Costello was nominated to the Board by Liberty.

13.     Defendant Fiona Dias ("Dias") has served as a director of HSN since July 2016.

14.     Defendant James M. Follo ("Follo") has served as a director of HSN since August 2008.

15.     Defendant Stephanie Kugelman ("Kugelman") has served as a director of HSN since August 2008.

16.     Defendant Thomas J. McInerney ("McInerney") has served as a director of HSN since August 2008.

17.     Defendant Matthew E. Rubel ("Rubel") has served as a director of HSN since September 2013.

18.     Defendant Ann Sarnoff ("Sarnoff") has served as a director of HSN since December 2012.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant Parent is Delaware corporation and a party to the Merger Agreement.

21.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of HSN (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable. As of June 29, 2017, there were approximately 52,380,693 shares of HSN common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

4

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29.     HSN is a $3.5 billion interactive multi-channel retailer with strong direct-to-consumer expertise and operates two business segments, HSN and Cornerstone.

30.     A leader in transactional innovation, the Company is the only retailer offering live streaming video on three screens: TV, online, and mobile.

31.     HSN broadcasts live to 90 million households in the United States 364 days a year, and its website features more than 50,000 product videos. Mobile applications include HSN apps for iPad®, iPhone®, Android™, and HSN on Demand®.

32.     Cornerstone is comprised of interactive, aspirational home, and apparel lifestyle brands including Frontgate, Ballard Designs, Garnet Hill, Grandin Road, and Improvements. Cornerstone operates separate e-commerce sites for all the brands, distributes more than 280 million catalogs annually, and has sixteen retail and outlet stores.

33.     On July 5, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by Liberty. Liberty already owns approximately 38.2% of HSN's common stock.

34.     Following the close of the Proposed Transaction, one of the Individual Defendants will be appointed to the Liberty board of directors.

35.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement

that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

36.     Further, the Company must promptly advise Liberty of any proposals or inquiries received from other parties.

37.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Liberty a "matching right" with respect to any "Superior Proposal" made to the Company.

38.     Further locking up control of the Company in favor of Liberty, the Merger Agreement provides for a "termination fee" of $40 million payable by the Company to Liberty if the Individual Defendants cause the Company to terminate the Merger Agreement.

39.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40.     Additionally, Liberty has agreed to vote all of its shares of HSN common stock in favor of the Proposed Transaction, representing approximately 38.2% of the Company's common stock. Accordingly, such shares are already locked up in favor of the merger, and the HSN Board did *not* condition the Proposed Transaction on the approval by a majority of HSN's non-Liberty stockholders.

41.     The merger consideration to be provided to plaintiff and the Class in the Proposed Transaction appears inadequate.

42.     Among other things, the intrinsic value of the Company is materially in excess of

the amount offered in the Proposed Transaction.

43.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

44.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

45.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

46.     First, the Registration Statement omits material information regarding HSN's financial projections, QVC's financial projections, and the analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and Goldman Sachs & Co. LLC ("Goldman").[1]

47.     With respect to the "HSNi unaudited forecasted financial information," the Registration Statement fails to disclose:  (i) interest; (ii) income taxes; (iii) unlevered cash taxes; (iv) net earnings; and (v) a reconciliation of all non-GAAP to GAAP metrics.

48.     With respect to the "QVC Group standalone unaudited forecasted financial information" (adjusted and unadjusted), the Registration Statement fails to disclose:  (i) interest; (ii) income taxes; (iii) unlevered cash taxes; (iv) net earnings; and (v) a reconciliation of all non-GAAP to GAAP metrics.

---

[1] According to the Registration Statement, while Liberty "formally engaged Allen & Company LLC [] to act as its financial advisor with respect to the potential transaction with HSNi" on June 21, 2017, "Allen & Co. was not asked to provide, and did not provide, a fairness opinion to Liberty Interactive regarding the transaction."

49.     With respect to the "QVC Group pro forma adjusted unaudited forecasted financial information," the Registration Statement fails to disclose:  (i) interest; (ii) income taxes; (iii) unlevered cash taxes; (iv) net earnings; and (v) a reconciliation of all non-GAAP to GAAP metrics.

50.     With respect to Centerview's *Discounted Cash Flow Analysis* of HSN, the Registration Statement fails to disclose:  (i) the forecasted unlevered after-tax free cash flows used by Centerview in the analysis and corresponding definition and line items; (ii) the range of illustrative terminal values of HSN; (iii) the inputs and assumptions underlying the discount rate range of 9.0% to 10.0%; (iv) Centerview's basis for applying perpetuity growth rates ranging from 1.0% to 3.0%; and (v) the value of HSN's net debt.

51.     With respect to Centerview's *Discounted Cash Flow Analysis* of QVC, the Registration Statement fails to disclose:  (i) the forecasted unlevered after-tax free cash flows used by Centerview in the analysis and corresponding definition and line items; (ii) the range of illustrative terminal values of QVC; (iii) the inputs and assumptions underlying the discount rate range of 8.5% to 9.5%; (iv) Centerview's basis for applying perpetuity growth rates ranging from 1.0% to 3.0%; (v) the value of QVC's net debt; (vi) the estimated market value of QVC's non-controlling interests; (vii) the market value of Liberty's stake in HSN as of July 5, 2017; and (viii) the estimated market value of QVC's stake in its joint venture in China with Beijing-based CNR Media Group.

52.     With respect to Centerview's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Centerview in the analysis.

53.     With respect to Centerview's *Selected Public Companies Analyses*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies

observed by Centerview in the analyses.

54.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of HSN, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for HSN; (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.5%; (iii) Goldman's basis for applying perpetuity growth rates ranging from 1.5% to 2.5%; and (iv) HSN's net debt as provided by Company management.

55.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of QVC, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for QVC; (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.5%; (iii) Goldman's basis for applying perpetuity growth rates ranging from 1.5% to 2.5%; (iv) QVC's net debt as provided by Company management; (v) the estimated market value of QVC's non-controlling interests; (vi) the market value of Liberty's stake in HSN as of July 5, 2017; and (vii) the estimated market value of QVC's stake in its joint venture in China with CNR Media Group.

56.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of QVC pro forma, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for QVC pro forma; (ii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.5%; (iii) Goldman's basis for applying perpetuity growth rates ranging from 1.5% to 2.5%; (iv) the net debt as provided by Company management; (v) the estimated market value of QVC's non-controlling interests; and (vi) the estimated market value of QVC's stake in its joint venture in China with CNR Media Group.

57.     With respect to Goldman's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Goldman in the analysis.

58.     With respect to Goldman's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Goldman in the analysis.

59.     With respect to Goldman's *Illustrative Premiums Paid Analysis*, the Registration Statement fails to disclose: (i) the transactions observed by Goldman in the analysis; and (ii) the premiums paid in such transactions.

60.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

61.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HSNi's Purpose and Reasons for the Merger and Other Proposals; Recommendation of the Special Committee and HSNi Board; Fairness of the Merger"; (iii) "Unaudited Forecasted Financial Information"; (iv) "Opinion of the Special Committee Financial Advisor (Centerview Partners)"; and (v) "Opinion of the Special Committee Financial Advisor (Goldman Sachs)."

62.     Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

63.     Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of HSN's officers and directors, including who participated in all such communications.

64.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HSNi's Purpose and Reasons for the Merger and Other Proposals; Recommendation of the Special Committee and HSNi Board; Fairness of the Merger"; and (iii) "Interests of Certain Persons of HSNi in the Merger."

66.     Third, the Registration Statement provides that:

> To resolve certain concerns raised by Liberty Interactive about the aggregate transaction fees payable to Goldman Sachs and Centerview Partners by HSNi under their respective engagement letters in light of Liberty Interactive's existing significant equity interest in HSNi, Goldman Sachs and Centerview Partners orally advised Liberty Interactive that, to the extent they were engaged in the future to provide investment banking advisory services to Liberty Interactive or certain entities controlled by Liberty Interactive, each would provide, depending on the circumstances, a credit of up to $5,000,000 toward such engagement.

67.     However, the Registration Statement fails to disclose the timing and nature of such communications regarding Goldman's and Centerview's potential future investment banking advisory services to be provided to Liberty or its affiliates.

68.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

69.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "HSNi's Purpose and Reasons for the Merger and Other Proposals; Recommendation of the Special Committee and HSNi Board; Fairness of the Merger"; (iii) "Opinion of the Special Committee Financial Advisor (Centerview Partners)"; and (iv) "Opinion of the Special Committee Financial Advisor (Goldman Sachs)."

70.     Fourth, the Registration Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

71.     For example, the Registration Statement fails to disclose the details and circumstances surrounding Liberty "ma[king it] clear that it was not interested in selling its approximately 38.2% ownership position in HSNi or supporting any such alternative transaction."

72.     Additionally, while the Registration Statement provides that "significant considerations that were important to the Special Committee" of the Board included "a requirement that the transaction be conditioned on approval by a majority of HSNi's non-Liberty Interactive stockholders," the Registration Statement fails to disclose the Special Committee's basis for "agree[ing] to proceed without that condition."

73.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i)

"Background of the Merger"; and (ii) "HSNi's Purpose and Reasons for the Merger and Other Proposals; Recommendation of the Special Committee and HSNi Board; Fairness of the Merger."

74.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to HSN's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and HSN

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  HSN is liable as the issuer of these statements.

77.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

78.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

79.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

80.    The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

81.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

82.    Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Liberty

83.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

84.    The Individual Defendants and Liberty acted as controlling persons of HSN within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of HSN and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

85.    Each of the Individual Defendants and Liberty was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

86.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same.   The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

87.     Liberty also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

88.     By virtue of the foregoing, the Individual Defendants and Liberty violated Section 20(a) of the 1934 Act.

89.     As set forth above, the Individual Defendants and Liberty had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

15

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  September 28, 2017

**CULLIN O'BRIEN LAW, P.A.**

By: _____

Cullin A. O'Brien (FBN #597341)
6541 N.E. 21st Way
Ft. Lauderdale, FL 33308
Tel.: (561) 676-6370
Fax: (561) 320-0285
cullin@cullinobrienlaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Dennis Palkon ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.  Plaintiff has reviewed the complaint and authorizes its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.  Plaintiff's purchase and sale transactions in the HSN, Inc. (NasdaqGS: HSNI) security that is the subject of this action during the class period is/are as follows:

<table>
<tr><td colspan="3">PURCHASES</td><td colspan="3">SALES</td></tr>
<tr><th>Buy Date</th><th>Shares</th><th>Price per Share</th><th>Sell Date</th><th>Shares</th><th>Price per Share</th></tr>
<tr><td>8/12/08</td><td>484</td><td>$10.00</td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

*Please list additional transactions on separate sheet of paper, if necessary.*

5.  Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _6_ day of September, 2017.

_Dennis Palkon_
DENNIS PALKON

2